## Case No. 17,464.

### WETHERILL et al. v. NEW JERSEY ZINC CO.

### WETHERILL et al. v. SAME.

[1 Ban. & A. 485.] [1]

Circuit Court, D. New Jersey. Oct., 1874.

INFRINGEMENT OF PATENTS—DAMAGES AND PROFITS—RULES FOR COMPUTATION—PROCESS PATENT—LIMITATION OF ACTIONS.

1. An infringer of a patent is, in equity, a trustee of the patentee, of the gains derived by him from the infringement.

2. Where the infringed patent is for an art, a fair measure of the infringer's actual profits is the saving in cost of production by the use of the appropriated invention, over the cost of

production by the use of cognate means, used and available.

3. The infringed invention consisted of an improved process of reducing zinc ores, and of thereby producing white oxide of zinc. *Held*, that the measure of the infringer's liability was the difference in cost of producing the white oxide of zinc obtained by the infringer by the use of the patented invention, and the cost of producing a similar quantity of the oxide by the old method.

[Cited in Sargent v. Yale Lock Manuf'g Co., Case No. 12,367.]

4. The infringer of a patented process of reducing zinc ores for the production of white oxide, cannot be charged with the value of an increased residuum, obtained by using the process, available for renewed treatment, which residuum fluctuates with the varying richness of the ore, and results, from its inherent natural properties, and is not imparted to it by the direct operation of any contemplated function of the process.

5. Where a patented process of reducing zinc ores for the production of white oxide of zinc, required for its successful practice, a furnace of special aptitude, and the furnaces in use at the time of the invention of the process were inapplicable to its successful or profitable practice, and the infringer employed another furnace, of special aptitude to the distinctive requirements of the patented process, the property of another, from whom he secured the right to its use, *held*, that the infringer's liability to the patentee of the process, estimated by the rule before enunciated, must be diminished by the contributive value of the furnace to the result produced. *Held*, also, that although the evidence supplied no data by which the contributory value of the furnace could be accurately estimated, yet, as the furnace and the process are indispensable coefficients in producing the result, the court, upon an accounting of the infringer's equitable accountability, would treat them as co-equal in their contribution to the joint result.

6. State statutes of limitation have no application to cases affecting statutory rights, cognizable, exclusively by the federal courts. Such rights can be affected only by laws of congress.

[Cited in McGinnis v. Erie County, 45 Fed. 91.]

[In equity. These were two suits by Samuel Wetherill and others against the New Jersey Zinc Company for alleged infringement of letters patent No. 13,806, for a process for making white oxide of zinc. Heard on exceptions to the master's report of profits.]

George Harding, for complainants.
Benjamin Williamson, for defendant.

McKENNAN, Circuit Judge. Equitable accountability for the unauthorized use of a patented invention, proceeds upon the hypothesis of a trust. An infringer, although technically a trespasser, is treated as a trustee of the gains resulting from the use of the patent property, and is held accountable accordingly. The benefit thus accruing to him is regarded as the patentee's contribution to his profits, and is the primary measure of his accountability. To obtain a just account of these profits, is, therefore, the special object of a master's researches, but it is not attainable by a uniform pursuit of the same methods. Different modes of computation are indicated by differ-

---

[1] [Reported by Hubert A. Banning. Esq., and Henry Arden, Esq., and here reprinted by permission.]

ent subjects and circumstances, but they must be appropriate means of ascertaining the actual benefit derived from the use of the patentee's exclusive property. Where the appropriated invention is an art, the simplest method of attaining this, is, perhaps, by a comparison between it and cognate means used and available for the production of the same result. The saving in cost of production, due to the new process, is a fair measure of the infringer's actual profits.

This is substantially the rule applied by the supreme court in Mowry v. Whitney, 14 Wall. [81 U. S.] 620. The patent, in that case, was for a process of manufacturing cast-iron railroad wheels, and the court says: "The question to be determined in this case is, what advantage did the defendant derive from using the complainant's invention, over what he had, in using other processes, then open to the public, and adequate to enable him to obtain an equally beneficial result. The fruits of that advantage are his profits."

The application of this test, in the ascertainment of the respondent's profits, is especially appropriate in this case. The complainant's invention consisted of an improved process of reducing zinc ores, and of thereby producing white oxide of zinc. Before its discovery the same result was accomplished by means of what are known as muffled furnaces. This was the method in use by the respondents, and after a protracted comparative trial of the complainant's invention, it was adopted, and the old process was abandoned. If "an equally beneficial result" was thereby obtained, and a saving was made in the cost of accomplishing it, a corresponding advantage accrued to the respondents, the obvious measure of which, is the difference in the cost of production, between the old and the new method.

The master has, however, instituted a very laborious inquiry into the operations of the respondents, involving a minute examination of their books, and intricate and voluminous computations, with a view of ascertaining the quantity of coal and labor saved in the manipulation of the ore treated by the complainants' process, the increased proportion of oxide obtained by it, and the quantity of residuum available for renewed treatment when the Wetherill process was adopted. The value of these items is taken as gains, upon the basis of which, the master has adjusted the respondents' accountability. The decisive objections to this are, that the result necessarily fluctuates with the varying richness of the ore treated, and that the respondents are charged with the residual value of the ore, resulting from its inherent natural properties, and which is not imparted to it by the direct operation of any contemplated function of the complainants' process. The simplest and most appropriate method is, to ascertain the quantity of oxide obtained by the use of the complainants' process, and the cost of its production, and comparing this with the cost of producing a like quantity by the muffle process, the difference is the saving due to the former.

The complainants' invention was avowedly adapted to the production of white oxide from the ores of zinc, and, as a novel and useful instrumentality for that purpose, a patent was granted for it. Other methods were in use before it, but its essential superiority over them consists in its economical capability of effecting the common result. This was the scope of its ostensible design, and exclusive adaptability; and, hence, it was adopted by the respondents, and the old method was discarded. For the value of this economical advantage, then, the respondents are accountable; and, the appropriate measure of it, is, the difference in the cost of obtaining the same product by means of the new process, and of the old one which it superseded.

From the evidence taken by the master, it appears, that for the years 1853-54-55, the cost of obtaining each 100 pounds of oxide, by the muffle process, was $2.05½; and for the years 1857-58-59, the cost of obtaining the same quantity, by the Wetherill process, was $1.63, showing a saving by the latter of 42½ cents per 100 pounds. Under all the circumstances, I think this is sufficiently accurate to furnish a just standard of computation of the respondents' gains, according to the rule before indicated.

During the time of the original patent, the quantity of oxide obtained by the use of the Wetherill process was 79,545,757 pounds, which, at 42½ cents per 100 pounds, gave a gain to the respondents of $338,069.47. Since the extension of the patent, 17,635,806 pounds of oxide have been produced, the gain upon which, at the same rate, is $74,952.17. These are the gross economical results of the use of the complainants' invention, in the production of white oxide of zinc. But are they wholly, or only in part, due to the agency of that invention? Whatever fruit was borne by it, the complainants are entitled to gather. But they cannot appropriate the entire value of advantages, which they have been only partially instrumental in securing. In proportion to their contributory efficiency in the production of beneficial results, they are entitled to participate in the consequent gains.

Now, it is an indisputable fact, that without a furnace of special aptitudes, the process in question cannot be successfully or profitably practised, and it is so found by the master. The muffle was entirely unsuitable to it, and, hence, another furnace was employed, with exclusive adaptation to its distinctive requirements. Without such furnace the process is an unfruitful abstraction. By their co-operative efficiency a profitable result is attained. Both are thus essential agencies in the production of this result. The complainants did not supply this indispensable co-efficient, but it was ostensibly the property of another, from whom the respondents secured the right to use it.

Upon what basis, then, ought the value of the result to be apportioned between these contributory agencies? The whole of it is claimed by the complainants, for the reason that the respondents have not furnished any data by which the contributory value of the furnace can be accurately determined. But, it does appear, that the furnace, indispensably contributed to the result, and that the process was only partially instrumental in securing it. To credit the process, then, with the whole value of this result, would award to it what it did not earn, and this, no consideration touching the burden of proof merely, could justify. In the very nature of things, it is impracticable to adjust the relative value of these instrumentalities, by any exact arithmetical standard. They are inseparable co-efficients, one, constituting the abstract method of reaching the desired result, the other, the mechanical instrument to effectuate it, each unfruitful without the co-operation of the other, and so, they must necessarily be treated as co-equal in their contribution to the joint result. Upon this basis, but one half of the gains, above stated, is due to the complainants' patent, and, for that proportion only, are the respondents to be adjudged liable.

It is urged that the accountability of the respondents must be confined to a period of six years before the filing of the bills. State statutes of limitation are authoritative in the federal courts, in cases only where the federal and state tribunals have concurrent jurisdiction of the cause of action. Statutory rights, which are cognizable, exclusively by the federal courts, can be affected only by the laws enacted by congress. The claims asserted here are in that category, and, as there is no act of congress applicable to them which limits the remedy, the respondents are without the protection of any statutory limitation of their liability. Nor, is there any sufficient reason, in equity, why their accountability should be thus circumscribed. The exclusive ownership of the invention in question was secured to the complainants by a patent, and of this the respondents had full knowledge. Without the remotest implication of assent by the complainants, but in manifest hostility to their right, the respondents appropriated their property, and have realized large profits from its use. For the consequences of this deliberate and persistent infringement, the respondents ought justly to be held fully accountable.

In the case of M. M. Jones, administratrix, and others, a final decree will be entered for the payment, by the respondents, of the sum of $169,034.73, with interest from October 2, 1871, and costs. And in the case of Wetherill & Gilbert a like decree will be entered for $37,476.08, with interest from the same date, and costs.

[For other cases involving this patent, see note to Wetherill v. New Jersey Zinc Co., Case No. 17,463.]